El Pueblo de Puerto Rico, demandante y apelado, *v.* José Guzmán, acusado y apelante.

No. 5325.—*Sometido:* Enero 30, 1934. *Resuelto:* Febrero 24, 1934.

*R. Atiles Moréu,* abogado del apelante; *R. A. Gómez, Fiscal,* abogado de El Pueblo, apelado.

EL JUEZ ASOCIADO SEÑOR ALDREY, emitió la opinión del tribunal.

El apelante fué condenado por delito de violación de una niña menor de catorce años. Su apelación se funda en que la acusación no le imputa un delito y en que fué errónea la resolución de la corte inferior que le negó el nuevo juicio que solicitó.

Dice que al expresar la acusación que yació con la niña menor de catorce años no le imputa el delito de violación porque "yacer" no significa tener contacto carnal con una persona según las definiciones que de esa palabra tienen el Diccionario General Etimológico de Roque Barcia y el nuevo Diccionario Enciclopédico de Larousse Ilustrado. Sin embargo, en el Diccionario de la Real Academia Española de 1925 (décimoquinta edición), una de las acepciones del verbo "yacer" es "Tener trato carnal con una persona."

Solicitó el apelante un nuevo juicio fundado en que el veredicto del jurado no fué imparcial y justo toda vez que el presidente del jurado, Juan Orta, tenía el deliberado propósito de declarar culpable al acusado teniendo conocimiento de los hechos y una opinión de culpabilidad absoluta, y, además, de otros hechos conectados con el acusado, los cuales conocía, por lo que antes y después de haber sido designado jurado para la vista de este caso tenía la opinión de culpabilidad absoluta y el propósito de obtenerla, según manifestaciones que hizo públicas al día siguiente del juicio en un

*club,* exponiendo que había perdonado varias veces al acusado pero que era hora de meterlo en el presidio para que escarmentase, pues era un perseguidor de niñas, habiendo en una ocasión encerrado a cuatro niñas, a las que desfloró. En dos declaraciones suscritas y juradas (*affidavits*) hechas por dos personas, que fueron presentadas con la moción de nuevo juicio, se hace constar que Orta dijo públicamente en un *club* la noche siguiente al veredicto que el jurado había procedido con justicia al dar su veredicto de culpabilidad contra José Guzmán en vista de los malos antecedentes del acusado realizados con varias niñas, que habían llegado a su conocimiento, relatando la desfloración de cuatro niñas y otro caso cometido con otra menor, y que todo eso lo dijo con el propósito **de justificar el veredicto** de culpabilidad que había dado en el jurado la noche anterior. En oposición a esa prueba presentó el fiscal del distrito la declaración jurada (*affidavit*) de dicho presidente del jurado en la que declara que fué calificado como jurado para el juicio de José Guzmán, de quien era amigo entonces, y que por la referencia de los periódicos no había formado opinión en el asunto ni tenía prejuicio contra el acusado: que al día siguiente de rendido el veredicto, mientras el mismo era comentado, fué informado por amigos y caballeros de la ciudad de otros muchos hechos atribuídos al acusado, que él no conocía antes, que llevaron a su ánimo la satisfacción del deber cumplido: que en el *club* hubo otros comentarios y allí dijo que se sentía tranquilo y satisfecho porque en ese mismo día, después de declarado culpable José Guzmán, había sabido por su amigo don Bartolo Morey, de Ponce, que se atribuían al acusado otros hechos delictivos semejantes a los que motivaron el veredicto y que había sabido además, después del veredicto, por el dueño de una casa de lavado y planchado (*laundry*) de la calle de Atocha, de Ponce, que él en persona había tenido que amonestar y amenazar a José Guzmán porque cometió una falta de respeto a una hijita menor suya: que en ningún momento ha dicho a persona alguna que tuviera conocimiento de esos hechos an-

tes .de entrar en el juicio, ni de que de tales hechos hiciera mención en la deliberación del jurado y que antes de la vista del juicio no tenía conocimiento de los hechos que se le imputaron al acusado, careciendo de prejuicio contra él.

No puede haber duda de que el acusado tenía derecho a un juicio justo e imparcial y que, en consecuencia, el jurado ante el cual se vea su caso no debe tener prejuicio contra él. También a que lo resuelva únicamente con la prueba que se presente ante el jurado. Por consiguiente, si se demuestra que todo el jurado o alguno de sus miembros tuvo prejuicio contra el acusado de tal modo que sus derechos substanciales hayan sido lesionados, debe concedérsele un nuevo juicio. Pero la prueba que se presente a la corte a la cual se pide el nuevo juicio ha de quedar sometida a la sana discreción de la corte, la que de acuerdo con ella ha de resolver si concede o no un nuevo juicio. Ha sido resuelto sobre esta cuestión por la jurisprudencia que cuando se aportan declaraciones juradas (*affidavits*) en pro y en contra de la solicitud surge una controversia que la corte tiene que resolver, y una vez resuelto el conflicto de las declaraciones, dicha resolución no será intervenida en apelación a menos que se demuestre un grave abuso de discreción o un manifiesto error. *El Pueblo* v. *Sinigaglia,* 13 D.P.R. 123; *El Pueblo* v. *Español,* 16 D.P.R. 216; *El Pueblo* v. *Rosado,* 16 D.P.R. 434; *El Pueblo* v. *Calderón,* 19 D.P.R. 934; *El Pueblo* v. *Soto,* 26 D.P.R. 446; 16 C. J., págs. 1154 y 1160, secciones 2650 y 2669.

El presidente del jurado admite en su declaración que hizo en un *club* la noche siguiente al veredicto de culpabilidad contra el apelante las manifestaciones que respecto a otros hechos análogos al que fué objeto del juicio le atribuyen las declaraciones que presentó el acusado al solicitar un nuevo juicio pero niega que conociera dichos hechos antes del veredicto y afirma que llegaron a su conocimiento por varias personas después del veredicto y que esto fué lo que dijo en el *club* ante varias personas, y que nunca tuvo prejuicio alguno contra el acusado. La evidencia que se sometió

a la corte sobre esa cuestión fué contradictoria en el punto esencial de si los hechos de otros actos anteriores análogos del acusado que el jurado relató en el *club* los conocía antes del veredicto y los tuvo en cuenta para su voto en el veredicto, o si los supo después, conflicto que resolvió la corte en contra del acusado sin que veamos que cometió un manifiesto error o un abuso de su poder discrecional. En el caso de *Gilleland* v. *The State,* 44 Tex. 356, que era un caso de asesinato, se dice lo siguiente:

"La conducta reprobable de un jurado no constituye fundamento absoluto para un nuevo juicio. Pero en casos de esa índole debe someterse a la discreción de la corte la cuestión de si la conducta reprobable del jurado ha sido de tal naturaleza que el acusado no ha tenido un juicio justo e imparcial. Y aunque la decisión de la corte negando el nuevo juicio que se ha solicitado por ese fundamento está sujeta a revisión como en cualquier otro caso sometido al ejercicio de discreción judicial, sin embargo, entendemos que esta corte debe pensar mucho para intervenir con la decisión de la corte inferior en vista de la mejor oportunidad que ha tenido ésta para observar y conocer todos los hechos ocurridos durante el curso del caso o que se han desarrollado durante la vista de la moción. Para que esta corte revoque una sentencia por el fundamento de que se ha negado una moción de nuevo juicio en semejantes casos, debe hacerse constar claramente que el acusado probablemente ha sufrido una injusticia o experimentado algún perjuicio con la resolución de la corte. No podemos ver que tales sean los hechos en el caso de autos. Las declaraciones juradas ofrecidas en apoyo de la moción demuestran con razonable certeza que uno de los jurados que tomó parte en el caso había formado y expresado su opinión sobre la culpabilidad del acusado antes de que fuera citado como jurado, y por tanto no podría decirse que fuera un jurado imparcial. Si tales fueron los hechos, y él contestó las preguntas que se le hicieron cuando se estaba constituyendo el jurado de tal modo que quedó habilitado para formar parte del mismo, puede muy bien resolverse que él fué culpable de conducta reprobable como jurado, por lo cual una moción de nuevo juicio por ese fundamento podría propiamente concederse. Pero las cuestiones alegadas en dichas declaraciones juradas fueron positivamente negadas bajo juramento por

el jurado; y él da una explicación que tiende a sostener su manifestación y a explicar la discrepancia entre lo que él manifestó sobre el caso y lo que han expresado los testigos en sus declaraciones juradas. Es cierto que se han presentado dos declaraciones juradas para sostener la moción de nuevo juicio y solamente una para contradecirla; pero no creemos que la decisión de la cuestión promovida por la moción de nuevo juicio deba depender necesariamente de que haya mayor número de declaraciones de una parte que de otra.''

Casos similares al presente y en los cuales se negó un nuevo juicio son los siguientes: *State* v. *Underwood*, 77 Pac. 863; *State* v. *Moretti*, 120 Pac. 102; *Smith* v. *State*, 114 Pac. 350, y *Harris* v. *Hogges*, 255 Pac. 685. En el caso resuelto por nosotros de *El Pueblo* v. *Villaveitia*, 43 D.P.R. 619, nos hemos expresado así:

''El apelante sostiene que la corte de distrito erró al declarar sin lugar una moción de nuevo juicio y al dictar sentencia. La última parte de esta contención se presenta como corolario de la primera, y no precisa discutirla separadamente.

''La moción de nuevo juicio se basó en unas manifestaciones que se dijeron haber sido hechas por uno de los jurados después del veredicto. Esas manifestaciones, si se hicieron tal como constan en las declaraciones juradas que se radicaron en apoyo de la moción, revelan una determinación fija, definitivamente formada antes del juicio, de condenar al acusado, independientemente de la evidencia que se aduciría en el mismo. De ser ciertas, esas manifestaciones hubieran requerido la concesión de un nuevo juicio, y, si las declaraciones juradas que se acompañaron a la moción no hubieran sido contradichas, la negativa de la moción hubiera constituído un error justificativo de la revocación. El jurado, sin embargo, negó en una contradeclaración jurada haber hecho las manifestaciones que se le atribuían, y los *affidavits* de otros jurados se pronunciaron en el sentido de que la conducta de él y sus conversaciones a través del juicio no daban idea alguna de predisposición o prejuicio contra el acusado. Debe presumirse que el juez sentenciador consideró esta cuestión de hecho al declarar sin lugar la moción y si bien una conclusión de hecho específica hubiese sido mucho más satisfactoria, no creemos que estaríamos justificados en alterar el resultado.''

*La sentencia apelada debe ser confirmada.*